**MOSES et al. v. UNITED STATES.**

**No. 22.**

Circuit Court of Appeals, Second Circuit.

Nov. 14, 1932.

Daniel Austin Shirk, of New York City (Lowndes C. Connally and Maurice Kay, both of Washington, D. C., of counsel), for appellants.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Herbert H. Kellogg and Albert D. Smith, Asst. U. S. Attys., both of Brooklyn, N. Y., C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., and Ralph E. Smith and D. Louis Bergeron, Sp. Attys., Bureau of In-

ternal Revenue, both of Washington, D. C., of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge.

In June, 1917, Benjamin Adriance paid some $82,000 as his income tax assessment for the year 1916. Subsequent to his death, the plaintiffs, as his executors, filed amended returns for the years 1915 and 1916, and, asserting an underassessment for the former year and an overassessment for the latter, claimed a refund of some $28,000 of the taxes paid for 1916. Upon an audit of these documents and the taxpayer's books, the Commissioner determined in 1923 that an overassessment of more than $81,000 had occurred with respect to the 1916 tax and an underassessment of some $52,000 with respect to the 1915 tax. On November 28, 1923, the Commissioner caused to be paid to the plaintiffs $28,872.23 in cash, and credited the balance of the overassessment against an additional assessment of $52,516.36 for the year 1915. This the plaintiffs accepted without objection, but more than five years later, having in the meantime suffered a change of heart, they demanded, on January 30, 1929, payment of the $52,516.36 so retained, with interest thereon, on the theory that the assessment in 1923 of an additional tax for 1915 was barred by the statute of limitations. On April 5, 1929, the Commissioner refused such demand, and on November 11, 1929, the present suit was begun against the United States.

The complaint sets up the foregoing facts and charges that, by the application of $52,-516.36 of the admitted overpayment for 1916 to payment of the additional assessment for 1915, the United States "attempted to collect and did collect" said additional assessment on November 28, 1923, and that this was illegal because the collection of any additional assessment for 1915 was then outlawed. It was further alleged that the collector to whom the 1916 tax was paid and the collector who held office in 1923 were both out of office at the commencement of this suit. Judgment was demanded for the said sum of $52,516.36, with interest thereon from June 14, 1917. In defense the government's answer asserted (1) that the additional tax for 1915 was legally assessed because prior thereto the plaintiffs had consented in writing to the assessment; and (2) that the suit was barred by the statute of limitations. Trial was to the court, without a jury, upon stipulated facts, and resulted in a dismissal of the complaint.

The disposition of the case which we are to make renders unnecessary a determination of the question whether there was such a consent in writing as would permit assessment of the additional tax for 1915 under section 250 (d) of the Revenue Act of 1921 (42 Stat. 265). We shall assume arguendo throughout the discussion which follows that such additional assessment in 1923 was illegal.

The appellants' brief has presented their suit as one founded upon the Commissioner's allowance in 1923 of the claim of overassessment for the year 1916, and the failure of the United States to pay the full amount so allowed. Both the allegations of the complaint and the proofs adduced at the trial are sufficient to establish such a cause of action. Bonwit Teller & Co. v. United States, 283 U. S. 258, 51 S. Ct. 395, 75 L. Ed. 1018. But the appellee challenges the jurisdiction of the court to entertain such a suit, and this raises the first question for consideration.

It involves an interpretation of section 24 (20) of the Judicial Code, as amended in 1921 and 1926 (28 USCA § 41 (20). Prior to these amendments, section 24 conferred jurisdiction on the District Court, concurrently with the Court of Claims, of suits against the United States on "claims not exceeding $10,000 founded upon * * * any law of Congress, * * * or upon any contract, express or implied, with the Government of the United States. * * *" The plaintiffs argue that their cause of action is on the implied promise of the government to refund the allowed claim of overpayment of the 1916 tax and arose on November 28, 1923, upon delivery to them of a certificate of overassessment. They concede that prior to the amendment of section 24 the District Court would have had no jurisdiction, since the amount claimed was more than $10,000, but they assert that the amendment has removed the limitation as to amount in such a suit as this. The amendment added to section 24 a paragraph which reads as follows (44 Stat. 121):

"Concurrent with the Court of Claims, of any suit or proceeding, commenced after the passage of the Revenue Act of 1921, for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any

manner wrongfully collected, under the internal-revenue laws, even if the claim exceeds $10,000, if the collector of internal revenue by whom such tax, penalty, or sum was collected is dead or is not in office as collector of internal revenue at the time such suit or proceeding is commenced."

It is apparent that this amendment enlarges the District Court's jurisdiction by giving claimants who allege that money has been wrongfully collected under the internal revenue laws the privilege of suing the United States regardless of the amount of the claim, but only on condition that "the collector of internal revenue by whom such tax, penalty or sum was collected" is dead or out of office. This condition makes apparent the intent of the legislation, namely, to permit suit against the United States as an alternative to a suit against a deceased or retired collector. Of suits against a collector, the District Court already had jurisdiction unlimited as to amount. Jud. Code § 24(5) 28 USCA § 41 (5). Such a suit was personal to the collector, would survive his retirement from office and would not abate upon his death. See Smietanka v. Indiana Steel Co., 257 U. S. 1, 42 S. Ct. 1, 66 L. Ed. 99; Union Trust Co. v. Wardell, 258 U. S. 537, 42 S. Ct. 393, 66 L. Ed. 753; Patton v. Brady, 184 U. S. 608, 22 S. Ct. 493, 46 L. Ed. 713. We think it clear that the suits allowed under the amendment must be of the same kind as those for which they are a substitute. In other words, after the amendment, if the collector by whom the tax was wrongfully collected is still in office, the suit must, as before, be brought against him, if the claim exceeds $10,000; but, if he is out of office, then it may be brought in the District Court against the United States regardless of the amount claimed. Hence, unless the plaintiff's suit is one that could be brought against a collector, it is not within the jurisdiction conferred on District Courts by the amendment.

Accepting the appellants' theory of their suit, the cause of action is grounded upon the Commissioner's determination evidenced by his certificate of overassessment. Bonwit Teller & Co. v. United States, 283 U. S. 258, 265, 51 S. Ct. 395, 75 L. Ed. 1018. The liability of the United States rests upon an implied promise to pay the allowed refund. United States v. Real Estate Savings Bank, 104 U. S. 728, 733, 26 L. Ed. 908; United States v. Kaufman, 96 U. S. 567, 570, 24 L. Ed. 792. But no such cause of action can arise against a collector. He can neither allow a refund nor draw money from the Treasury to pay it. Hence no suit will lie against him based on the allowance of a refund. In Arthur C. Harvey Co. v. Malley, 60 F.(2d) 97, 100 (C. C. A. 1) the court said:

"If the appellant had declared as on an account stated, or a promise to pay by reason of the certificate of overassessment issued by the collector in May, 1923, as in Bonwit Teller & Co. v. United States, 283 U. S. 258, 265, 51 S. Ct. 395, 75 L. Ed. 1018, we think its action would have to be brought against the United States, as neither of the defendants had anything to do with issuing of the certificate of overassessment or were privy to any promise therein contained, either express or implied, to refund the overpayment."

Routzahn v. Reeves Brothers Co., 59 F. (2d) 915 (C. C. A. 6), is in accord. Cf. Peerless Paper Box Mfg. Co. v. Routzahn, 22 F. (2d) 459 (D. C. N. D. Ohio). See, also, United States v. Savings Bank, 104 U. S. 728, 734, 26 L. Ed. 908; where it is said that a rejected claim may be prosecuted against the collector, and an allowed claim, not paid, against the United States in the Court of Claims.

In the case at bar, the plaintiffs proved facts which created a contractual obligation on the part of the United States to pay over the allowed refund, and a breach of that obligation by retention of $52,000 for an unjustifiable reason; i. e., the illegally assessed additional tax for 1915. They urge that, regardless of the legal theory upon which their suit is based, it is a suit for a "tax alleged to have been erroneously or illegally assessed or collected," and so within the letter of the amendment expanding the District Court's jurisdiction. But the theory of the suit determines whether it is one which would lie against a collector if he were alive and in office; and, if it be not such a suit, then, for reasons already stated, we are satisfied that the amendment does not cover it. Two decisions of the District Court are cited as having assumed jurisdiction of a suit like the present. Brady v. United States, 24 F.(2d) 205 (D. C. D. Mass.); United Motors Corp. v. United States, 44 F.(2d) 407 (D. C. S. D. N. Y.). In the Brady Case it does not appear that more than $10,000 was involved. In the United Motors Case, where the claim was greater, jurisdiction was assumed without discussion. We think this assumption was erroneous. Therefore, if the plaintiffs can rely only upon the cause of action above discussed, we must reverse the judgment and direct dismissal for lack of jurisdiction.

794

However, it is not entirely clear from the complaint what cause of action it attempts to set forth. Paragraph 13 of the complaint alleges that, by the application of part of the admitted overpayment for the year 1916 to the alleged additional assessment for 1915, "the defendant attempted to collect and did collect, on or about November 28, 1923, said alleged additional assessment upon the income of said Benjamin Adriance for the year 1915." This is followed by allegations that in 1923 the defendant was barred from collecting any additional assessment for the year 1915, and that the application of $52,-516.36 of the admitted overpayment as a credit to the alleged 1915 assessment was illegal. This portion of the complaint seems to allege an illegal collection of the 1915 tax in November, 1923. But, if this be the theory of the complaint, it is subject to the same jurisdictional objection already discussed. The allegation is that the collection was made by "the defendant," and there are set forth no acts by any collector in connection with it. Paragraph 10 does say that one Ferguson was collector of internal revenue in October and November, 1923, and was out of office when the suit was commenced, but there is nothing alleged to show that he had anything to do with the collection made by the defendant. The proof, however, showed that Ferguson made certain bookkeeping entries relating to crediting the 1916 overpayment against the 1915 assessment. These were mere ministerial acts pursuant to instructions given by the Commissioner. Even if the allegations of the complaint were amended to conform to the proof (which was not asked), they would not charge any acts which would render Ferguson liable to the plaintiffs. Therefore, construing the complaint as based upon the illegal collection of the 1915 tax, and assuming this to be a valid cause of action against the United States, it is not one of which the District Court had jurisdiction, because no such action would lie against Collector Ferguson were he still in office.

Moreover, even if our conclusion as to jurisdiction with respect to this second cause of action were wrong, and the District Court had jurisdiction, no right of action with respect to an illegal collection of the 1915 tax was proved, because no timely claim for refund thereof was presented to the Commissioner as required by Rev. Stat. § 3226, as amended (26 USCA § 156). The collection was made in November, 1923, and the demand for repayment made by letter of January 30, 1929 (even if the letter be assumed to be a sufficiently formal claim), was more than five years after payment of such tax. This was too late. Rev. Stat. § 3228, as amended (26 USCA § 157). The filing of a claim is a prerequisite to suit for recovery of a tax illegally collected, United States v. Felt & Tarrant Co., 283 U. S. 269, 272, 51 S. Ct. 376, 75 L. Ed. 1025, and it must be filed before the statute of limitations has run, Solomon v. United States, 57 F.(2d) 150, 151 (C. C. A. 2). Hence, on the assumption that the suit was to recover the illegally collected tax for 1915 and that the court had jurisdiction, the judgment of dismissal was correct.

There is a third possibility to be considered out of lenity to the complaint. It may be construed as alleging a cause of action founded upon the erroneous collection of $82,000 for the 1916 tax by the collector to whom that sum was paid in June, 1917, and the retention from the plaintiffs of $52,000 of that sum. In this view the allegations of why it was retained—to satisfy the illegal 1915 tax—would be merely surplusage. A suit based on an illegal collection of the 1916 tax would lie against the collector were he still in office, and, therefore, after his retirement could be brought against the United States by virtue of the amendment to section 24(20) of the Judicial Code. In other words, if this be the theory of the complaint, the court had jurisdiction, and we must consider whether the judgment of dismissal was correct under the evidence.

The tax was paid voluntarily. At common law and under the internal revenue statutes as they existed for many years, neither a collector nor the United States was liable to repay an erroneously collected tax unless the taxpayer paid under protest and duress. Elliott v. Swartwout, 10 Pet. 137, 153, 9 L. Ed. 373; Chesebrough v. United States, 192 U. S. 253, 24 S. Ct. 262, 48 L. Ed. 432; United States v. New York & Cuba Mail S. S. Co., 200 U. S. 488, 26 S. Ct. 327, 50 L. Ed. 569; Fox v. Edwards, 287 F. 669 (C. C. A. 2); Winant v. Gardner, 29 F.(2d) 836 (C. C. A. 2). In 1924, section 3226 of the Revised Statutes was amended by section 1014 of the Revenue Act of 1924 (43 Stat. 343 [see 26 USCA § 156 and note]) so as to permit suit for a tax erroneously assessed or collected whether or not the tax was paid under protest or duress. Paragraph b of section 1014 expressly declared that the amendment shall not apply to pending suits. The implication is that it shall apply to all subsequent suits even though they relate to taxes paid prior to the enactment of section 1014. This court apparently so assumed by

way of dictum in Winant v. Gardner, 29 F. (2d) 836, which involved a suit pending when section 1014 was enacted. Fox v. Edwards (C. C. A.) 287 F. 669, was also a pending suit. Compare Rasmussen v. Brownfield-Canty Carpet Co., 31 F.(2d) 89, 92 (C. C. A. 9), where the collector was held free from liability for a tax erroneously but voluntarily paid before the 1924 amendment went into effect, although the suit was commenced thereafter; and see Warner v. Walsh, 27 F. (2d) 952 (D. C. D. Conn.), questioning the constitutionality of the opposite construction. We shall assume arguendo that the fact that the tax was voluntarily paid in 1917 would be no bar to the present suit. There is, however, the prohibition of Rev. Stat. § 3226, as amended (26 USCA § 156), against maintaining any suit for the recovery of an illegally collected tax "until a claim for refund or credit has been duly filed with the Commissioner of Internal Revenue." The claim for refund filed by the plaintiffs in January, 1922, asked for a refund of $28,872.18, stating the reasons therefor as follows: "A large part of this income was received in December, 1915, and should have been returned in that year, but was not, owing to the sickness of the claimant (now deceased) and the unfamiliarity of his book-keeper with the income tax law and the transactions involved."

 It then states the taxes actually paid for 1915 and 1916 and the correct taxes as shown by amended returns, and claims that the difference, namely, $28,872.18, "should be refunded." The Commissioner granted the exact relief demanded by this claim; he refunded in cash $28,872.23, and gave credit on the additional assessment for 1915 of the balance of the overassessment for 1916. It is true that opposite the amount specified as claimed the printed form contained the words: "Amount now asked to be refunded (or such greater amount as is legally refundable)." But this does not negative our statement that the plaintiffs obtained the exact relief they demanded. They are now suing for a sum they never asked the Commissioner to refund. That being so, we do not think the statute was satisfied. The claim for refund which the statute makes prerequisite to suit obviously relates to the claim which may be asserted by the suit. United States v. Felt & Tarrant Co., 283 U. S. 269, 272, 51 S. Ct. 376, 75 L. Ed. 1025. If, however, the claim could be construed as asking for more than $28,872.18, then the Commissioner's notification that the balance would be applied to the 1915 tax should be considered a rejection of the claim, and suit had to be brought within two years thereafter. Were the plaintiffs' cause of action founded upon the Commissioner's allowance of their claim, the limitation of section 3226 would not apply, as was held in the Bonwit Teller Case; but, if their cause of action is upon an illegal collection of the 1916 tax, as it must be to give the court jurisdiction, then section 3226 does apply both as to the necessity of filing a claim and as to the period within which suit must be brought after its rejection.

Viewing the complaint in the light most favorable to the complainants, we hold that it alleged a cause of action founded upon the illegal collection of the 1916 tax, but that such cause of action was barred by the delay in bringing suit.

Accordingly, the judgment is affirmed.