## UNITED STATES v. BOTANY WORSTED MILLS.

### No. 6705.

Circuit Court of Appeals, Third Circuit.

Sept. 2, 1938.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Arthur A. Armstrong, Sp. Assts. to Atty. Gen., for the United States.

J. S. Y. Ivins, of Washington, D. C., and Henry B. Twombly, of New York City (Brewster, Ivins & Phillips, of Washington, D. C., of counsel), for appellee.

Before DAVIS and BIGGS, Circuit Judges, and MARIS, District Judge.*

MARIS, Circuit Judge.*

This is an appeal by the United States from a judgment entered against it by the District Court for the District of New Jersey in a suit brought by Botany Worsted Mills to recover interest claimed to be due upon a refund of income tax made to the plaintiff in 1931.

The plaintiff filed its income and profits tax return for the fiscal year ended November 30, 1918, and paid the taxes shown to be due thereon in quarterly installments, the last of these being paid on December 15, 1919. Thereafter the Commissioner of Internal Revenue determined that the plaintiff had overpaid its taxes for that fiscal year in the amount of $116,281.61. On September 15, 1921 that sum, without

---

*Appointed Circuit Judge June 24, 1938.

interest, was credited to a deficiency in income and profits taxes which the Commissioner had assessed against the plaintiff for the fiscal year ended November 30, 1917. During the year 1931 the Commissioner determined that the plaintiff's taxes for that fiscal year had been overpaid and that the sum of $116,281.61 so credited thereon was included in the overpayment. That sum was accordingly refunded to the taxpayer with interest from September 15, 1921, the date of credit.

Thereafter the plaintiff demanded of the Commissioner payment of an additional amount of interest at 6% per annum on the principal sum refunded to cover the period from December 15, 1919, the date it was paid on account of its 1918 taxes, to September 15, 1921, the date it was credited on account of its 1917 taxes. This demand having been refused, the plaintiff brought the present suit under the Tucker Act, 28 U.S.C.A. § 41(20), voluntarily limiting its claim to $10,000 in order not to oust the jurisdiction of the District Court. The court entered judgment for the plaintiff and this appeal followed. The sole question presented is whether upon the refund of taxes made to it in 1931 plaintiff was entitled to receive interest from December 15, 1919, when the sum refunded was first paid to the Government on account of taxes for 1918, or only from September 15, 1921, when the sum was credited upon a deficiency in 1917 taxes.

On September 15, 1921, when the credit in this case was made, there was no statutory provision for the payment of interest on credits and refunds, the earliest statutory authority for the payment of interest in such cases being contained in the Revenue Act of 1921, 42 Stat. 227, which became effective on November 23, 1921. Since interest upon claims against the United States is not allowable in the absence of statutory authority (United States ex rel. Angarica v. Bayard, 127 U. S. 251, 8 S.Ct. 1156, 32 L.Ed. 159), it is clear that the Commissioner's action on September 15, 1921 in not allowing interest on the credit then made was entirely right, for interest on refunds and credits must be computed according to the statutory provisions, if any, in force at the time of their allowance rather than those afterward enacted. Blair v. United States ex rel. Birkenstock, 271 U.S. 348, 46 S.Ct. 506, 70 L.Ed. 983; United States v. Mag-nolia Petroleum Co., 276 U.S. 160, 48 S.Ct. 236, 72 L.Ed. 509; United States v. Boston Buick Co., 282 U.S. 476, 51 S.Ct. 206, 75 L.Ed. 470.

Section 614 of the Revenue Act of 1928, 45 Stat. 876, 26 U.S.C. § 1671, 26 U.S. C.A. § 1671, which was in force when the refund of 1931 was made, contains the following pertinent provisions:

"(a) Interest shall be allowed and paid upon any overpayment in respect of any internal-revenue tax, at the rate of 6 per centum per annum, as follows:

"(1) In the case of a credit, from the date of the overpayment to the due date of the amount against which the credit is taken, but if the amount against which the credit is taken is an additional assessment of a tax imposed by the Revenue Act of 1921 or any subsequent revenue act, then to the date of the assessment of that amount.

"(2) In the case of a refund, from the date of the overpayment to a date preceding the date of the refund check by not more than 30 days, such date to be determined by the Commissioner."

It will be observed that under the provisions of the statute interest upon refunds is to be paid from the date of the overpayment of the tax. We are thus confronted with the question as to when the overpayment of the tax refunded to the plaintiff took place. The plaintiff argues that this date was December 15, 1919, when it paid out the money on account of its 1918 tax. It seeks to have us disregard as void the credit made in 1921 and asks us to treat the refund made in 1931 as having been in fact a refund of the 1918 tax paid in 1919 and not the 1917 tax credited in 1921. This we may not do, however.

While the additional assessment of 1917 tax upon which the credit was made was undoubtedly erroneous, as was later conceded by the Commissioner, it had been made by him in the exercise of his administrative powers within the time limited by law, and in 1921 was an outstanding assessment against the plaintiff which was presumptively proper. Wilson v. Eisner, 2 Cir., 282 F. 38. As such it furnished a sufficient legal basis for the credit allowed against it by the Commissioner on September 15, 1921. That credit did not come within any of the categories of credits which are declared to be void by Section

609 of the Revenue Act of 1928, 26 U.S. C. § 1675, 26 U.S.C.A. § 1675. It was made pursuant to the express direction of Section 252 of the Revenue Act of 1918, 40 Stat. 1085, which was then in force, and must be regarded as a valid final closing of the accounts between the Government and the taxpayer so far as the overpayment of 1918 tax was concerned. Furthermore the refund made to the plaintiff in 1931 was based upon an overassessment of 1917 tax. It was made because the Commissioner determined that the additional assessment of 1917 tax, upon which he had made the credit in 1921, was erroneous. The Commissioner would have been without power upon that determination to make a refund of 1918 tax, for under the scheme of taxation set up by the Revenue Act of 1913, Act Oct. 3, 1913, § 2, 38 Stat. 166, and its successors, income and profits taxes are levied with respect to annual periods each of which stands by itself and must be dealt with separately. Corn Exchange Bank v. Commissioner, 6 B.T.A. 158.

We, therefore, conclude that the refund made in 1931 was of an overpayment of 1917 tax. It follows that the date of the overpayment was September 15, 1921, the date on which the amount overpaid for 1918 was credited by the Commissioner upon 1917 tax, since the credit amounted in law to a payment of the tax to which it was applied. United States v. Swift & Co., 282 U.S. 468, 51 S.Ct. 202, 75 L.Ed. 464. Our construction of the word "overpayment" in Section 614 as including an overpayment by credit, as well as by cash, carries out the legislative intent. This is made manifest when we note that Section 614 provides for interest upon credits as well as upon cash refunds. It must be obvious that the interest authorized by clause (2) of Section 614 upon a refund of a tax paid by a prior credit runs only from the date of credit, since interest on the amount of the credit is expressly provided for by clause (1) of the same section. Certainly the Congress did not intend to allow double interest upon a credit. This, however, would be the logical result of the plaintiff's theory when it is applied to a case in all respects similar to the one before us except that it involves a credit allowed after November 23, 1921, the effective date of the earliest statute requiring interest to be paid on credits and refunds. A construction of the statute which would produce such unequal and unjust results is to be avoided if possible. Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969.

It will be seen that what the plaintiff really asks is to receive interest on a credit which was made at a time when there was no statutory authority for the allowance of interest on either credits or refunds. This, however, it may not have since, as we have seen, interest upon credits and refunds is payable only if and to the extent provided by the statute in force when they are made. Furthermore it will be observed that if the plaintiff is permitted to recover it will thereby be accorded a preferred status over all other taxpayers whose refunds or credits were allowed prior to November 23, 1921 and who consequently received no interest on them. If the plaintiff had received on September 15, 1921 a cash refund of its 1918 tax overpayment instead of a credit thereof on the 1917 deficiency, it would have gotten no interest thereon and would have no possible claim for interest at this time. The same would have been true if it had received the refund after having paid the additional assessment for 1917 in cash. The fact that its accounts with the Government were balanced by the allowance of a credit, which merely eliminated the necessity for the payment of cash each way, does not change the legal effect of the transaction as a payment by the Government to the plaintiff of the 1918 tax refundable to it, and a simultaneous payment by the plaintiff to the Government of the same amount on account of its then outstanding tax assessment for 1917.

It follows that the court below erred in entering judgment for the plaintiff. The judgment is accordingly reversed.